**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Samuel Gonzalez, | ) | |
| *Plaintiff*, | ) | No. 24 C 11448 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| Village of Summit, Illinois, Summit Police Officers Donato #155, and Pasquel, #310 | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Samuel Gonzalez was walking door-to-door soliciting for yardwork on a summer day in Summit when—after confronting police—he was arrested and charged with assault and resisting arrest. He claims the officers lacked probable cause to arrest him, violating his Fourth Amendment rights for false arrest and malicious prosecution. (Dkt. 1). Defendants Village of Summit, Illinois and Summit Police Officers Donato and Pasquel move for summary judgment, contending that there was probable cause, no evidence of malice, and no deprivation of liberty. (Dkt. 24). Because there are genuine issues of material fact as to all of Gonzalez's claims, the Court denies Defendants' motion. (*Id.*)

**BACKGROUND**

Police responded to 911 calls from Summit residents concerning a man in a red hat knocking on doors. (Dkt. 33, ¶¶ 4-7). These calls about the red-hatted solicitor coincided with an uptick in burglaries in the area. (*Id.*, ¶ 6); (Dkt. 26-2 at 2, Dep. 8:18-9:12). The Summit solicitor, who had knocked on over 200 residents' doors until the police found him, turned out to be Gonzalez. (*Id.*, ¶ 4). Officer Pasquel was the first on the scene. (*Id.*, ¶ 8). Once Gonzalez saw

Officer Pasquel, he began walking towards him. (*Id.*) The parties tell two different stories about what happens next.

Gonzalez's side of events starts with him walking up to Officer Pasquel without speaking. (Dkt. 33, ¶ 13). Once he made contact with Officer Pasquel, he claims they were "engaged in a peaceful conversation." (*Id.*, ¶ 16). Until, suddenly, Officer Donato grabbed Gonzalez from behind and forced him against Officer Pasquel's car—arresting and handcuffing him. Only then, Gonzalez began swearing and protesting the false arrest. (*Id.*, ¶ 10).

Defendants contend that Gonzalez "walked aggressively towards Pasquel's squad car as Pasquel exited his vehicle, while shouting 'motherfuckers' and other threatening obscenities." (*Id.*, ¶ 8). These obscenities were indeed threatening, they claim, as Gonzalez swore "I'm going to fuck you up." (*Id.*, ¶ 9). Officer Donato ordered Gonzalez to walk to him, but Gonzalez ignored these commands, Defendants claim. (*Id.*, ¶ 15).

The dashcam footage has no discernable audio of what Gonzalez said. (Dkts. 27, 28, 35-2, 35-7, 36-38) ("Video Evidence"). It also does not show Gonzalez walking up to Officer Pasquel's car. (*Id.*) The following events took no more than fourteen seconds: Officer Donato exits his vehicle and walks quickly towards Officer Pasquel's car. (*Id.*) The first moment you can see Gonzalez and Officer Pasquel, Officer Pasquel is exiting his vehicle; his door is still open; and he is standing touching his open door. (*Id.*) Gonzalez is standing on the same lateral axis as Officer Pasquel, abeam of the vehicle's open door. (*Id.*) Officer Pasquel then closes his door, and steps towards Gonzalez. (*Id.*) At that moment, Gonzalez and Officer Pasquel are both facing each other and Officer Donato is quickly approaching them. (*Id.*) As Officer Donato's pace quickens, Gonzalez rotates to his left, continuing to square up to Officer Pasquel. (*Id.*) Once fully squared up, Gonzalez begins to raise his arms about halfway up his torso as Officer Donato grabs him from

behind. (*Id.*) Pushing Gonzalez to the right toward Officer Pasquel's car, Officer Donato begins the arrest. (*Id.*) The moment Gonzalez's right hand touches the car, he looks back to his left, his body moving that way as well. (*Id.*) In that instant, Officer Pasquel steps in, grabs Gonzalez's left arm, and forces him against the car as both Officers complete the arrest and handcuffing process. (*Id.*); (*see also* Dkt. 33, ¶¶ 17-21).

During the handcuffing, Defendants contend that Gonzalez was swearing obscenities and "pulled his arm away from Donato as he tried to cuff him[.]" (Dkt. 33, ¶ 21); (*see also id.*, ¶¶ 18-22). Gonzalez claims he was "fully compliant and did not interfere with the officers when they were handcuffing him." (*Id.*)

Once in the back of the squad car, Gonzalez antagonized the officer driver stating, along with various obscenities, that "'I did this on purpose,' 'you know I'm on parole,' 'you're going to lose your badge,' '$250,000 payday for me,' 'I walked right up to you,' and 'wait until I get out of these cuffs and into a lawyer's office.'" (Dkt. 33, ¶ 23).

Defendants charged Gonzalez with three misdemeanors: obstruction, resisting arrest, and aggravated assault of a peace officer. (*Id.*, ¶ 24). Gonzalez was detained for about 48 hours; while in a holding cell, Gonzalez told the "officers he was going to kill himself." (*Id.*, ¶ 27); (*see also* Dkt. 32 at 8-9). He was then taken to LaGrange Hospital "where he was cuffed to the hospital bed and officers were present." (*Id.*, ¶ 28). After this, he voluntarily admitted himself for a seven-day inpatient treatment. (*Id.*, ¶ 29). On August 4, 2024, after a bench trial, Plaintiff was found not guilty on all counts. (*Id.*, ¶ 35).

## LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"

*Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *Anderson*, 477 U.S. at 248. The movant "bears the burden of showing that summary judgment is appropriate" and that these requirements have been met. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The movant "may discharge this responsibility by showing that there is an absence of evidence to support the nonmoving party's case." *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 295 (7th Cir. 2018) (quotes omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To overcome a motion for summary judgment, the "nonmoving party must provide specific material facts showing there is a genuine issue for trial." *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party who fails to produce evidence sufficient to show an element essential to his case on which he bears the burden cannot survive a summary judgment motion." *Gills v. Hamilton*, 164 F.4th 640, 644 (7th Cir. 2026).

## DISCUSSION

### I. False Arrest

Summit residents called 911 about a man in a red hat knocking on doors in an area where there had been "a lot of burglaries." (Dkt. 26-2 at 2, Dep. 8:18-9:2). Police were dispatched to investigate. (*Id.*); (*see also id.* at 3, Dep. 9:3-12; 9:20-24) ("I believe there were three or four different squad cars" "in the area looking for him"). Gonzalez matched the 911 descriptions of the person of interest. (*Compare* Dkt. 26-1 at 7, Dep. 25:14-19 *with* Video Evidence). Once the Officers found Gonzalez, they assert that he was hostile—swearing and acting threatening. (*See,*

*e.g.*, Dkt. 33, ¶¶ 11, 13, 14, 18-20); (Dkt. 26-2 at 10, Dep. 42:8-11); (Dkt. 26-3 at 3, Dep. 9:17-24; *id.* at 4, Dep. 14:10-14; *id.* at 5, Dep. 19:7-13). They also assert that he was acting impetuously by ignoring Officer Donato's orders. (*Id.*). Once they physically initiated the arrest, Defendants contend that Gonzalez resisted arrest by pulling his arm back. (*Id.*, ¶ 21). Based on all this, Defendants claim they had probable cause to arrest Gonzalez. (Dkt. 25 at 4-7).

Gonzalez counters that his solicitation, knocking on 200 doors, and apparent ordinance violations are not relevant because they occurred before he was arrested—and so the Officers had no knowledge of these facts. (Dkt. 32 at 2-3). Gonzalez denies uttering "any obscenities as he approached defendant Pasquel's police vehicle." (Dkt. 32 at 3). He also claims that "words alone" are "seldom if ever" sufficient to "constitute an assault" because there "must be an accompanying gesture that is either inherently threatening or made so by the accompanying words"; and, here, Gonzalez says that there is no evidence he made a threatening gesture. (*Id.* at 4) (quotes omitted); (*see also* Video Evidence). He denies pulling his arm away while getting handcuffed, which, he believes, is "inconsistent with the video evidence" which actually "shows that [he] was fully compliant." (*Id.* at 5-6). Gonzalez likewise points to the Video Evidence to rebut Defendants' claim that he was ignoring their orders. (*Id.*)

"To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no probable cause for his arrest." *Johnson v. Edwards*, 164 F.4th 1074, 1080 (7th Cir. 2026) (quoting *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022)). "Probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Klein v. Daniels*, 2025 WL 3175256, at *2 (7th Cir. Nov. 13, 2025) (quoting *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021)). "This is not a high bar." *Id.* (quoting *Young*,

987 F.3d at 644). "Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.* (quoting *Maltby v. Winston*, 36 F.3d 548, 556 (7th Cir. 1994)). The Court assesses "probable cause objectively based on information known to the officer." *Id.* (citing *Young*, 987 F.3d at 644). "The elements of the predicate criminal offense frame [the Court's] probable cause analysis." *Petersen v. Pedersen*, 140 F.4th 421, 426 (7th Cir. 2025) (citing *Doe v. Gray*, 75 F.4th 710, 719 (7th Cir. 2023)).

**a. Assault**

Defendants charged Gonzalez with assault of a peace officer. "A person commits aggravated assault when, in committing an assault, he or she knows the individual assaulted to be . . . A peace officer . . . (i) performing his or her official duties; (ii) assaulted to prevent performance of his or her official duties; or (iii) assaulted in retaliation for performing his or her official duties." 720 ILCS 5/12-2(b)(4.1).

Once the Officers made contact with Gonzalez, the parties' stories materially diverge whether Gonzalez verbally assaulted the Officers. The Video Evidence—showing the moment of arrest—has no discernable audio of what the parties said. (*See* Video Evidence). The parties dispute whether Gonzalez was swearing and making threats. (Dkt. 25 at 4-7); (Dkt. 32 at 3-7).

Gonzalez concedes he swore *in general*. (Dkt. 26-1 at 9, Dep. 30:11-15) ("Q: So at any point in time did you ever say why are you harassing me, mother fuckers? A: That might have slipped my tongue, ma'am, yes."). He maintains, however, that he said nothing when approaching Officer Pasquel and only *began* to swear once the officers put their hands on him. (*See* Dkt. 33, ¶¶ 8-20); (Dkt. 26-1 at 9, Dep. 30:16-21) ("I yelled at them when they had put their hands on me.").

Gonzalez otherwise denies swearing or yelling at them. (*Id.*); (*see also* Dkt. 26-1 at 9; Dep. 30:6-21).

The evidence is disputed what Gonzalez said and when. The parties' stories are polar; the Video Evidence, inconclusive. By all accounts Gonzalez could have been questioning why the police were stopping him, which may not suffice for probable cause. *See People v. McCoy*, 378 Ill. App. 3d 954, 962 (2008) ("The statute does not prohibit a person from verbally resisting or arguing with a police officer about the validity of an arrest or other police action. . . . Verbal resistance or argument alone, even the use of abusive language, is not a violation of the statute.") (citing 720 ILCS 5/31–1(a)). The Video Evidence's lack of audio and Gonzalez's denials flatline Defendants' motion on this issue.

The parties' stories again materially diverge whether Gonzalez was physically threatening. The Video Evidence is inconclusive. (*See* Video Evidence). Whether Gonzalez committed a physically threatening gesture is critical to the assault analysis. "Ever since the fourteenth century, assault whether civil or criminal has involved (1) a threatening *gesture,* or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (citing *I. de S. et ux. v. W. de S.,* Y.B. Liber Assisarum, 22 Edw. 3, f. 99, pl. 60 (1348 or 1349)); *Shea v. Winnebago Cnty. Sheriff's Dep't*, 746 F. App'x 541, 548 (7th Cir. 2018); *People v. Cooper*, 2026 IL App (1st) 231494-U, ¶ 21 ("physical movement or gestures of a threatening nature are required before threatening words may be considered to be an assault") (quotes and brackets omitted).

In the split second before Officer Donato grabs Gonzalez, Gonzalez is raising his arms. (*See* Video Evidence). Whether that is threatening, questioning, or appeasing is not for the Court but the jury to decide. The parties also dispute how Gonzalez approached Officer Pasquel. *Supra*

at 1-3. This is not captured on video. (*See* Video Evidence). Whether Gonzalez's gait was threatening is again a jury question. To be sure, "without more evidence, there is nothing wrong in itself with approaching a police office." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 723 (7th Cir. 2013) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009)). Yet if Defendants' story is true—that Gonzalez charged Officer Pasquel yelling threats—that may be more than enough for a finding of probable cause. *Compare, e.g.*, *Walters v. Thompson*, 2016 WL 5934091, at *6 (N.D. Ill. Oct. 12, 2016) *with Skube v. Koester*, 120 F. Supp. 3d 825, 831 (C.D. Ill. 2015). Because "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the "probable cause determination must be made by a jury." *Petersen*, 140 F.4th at 426 (quoting *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014)).

**b. Obstruction and Resisting Arrest**

Defendants charged Gonzalez with obstruction and resisting arrest. "A person who knowingly: (1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a).

Defendants assert that Gonzalez "pulled his arm away from Donato as he tried to cuff him while continually yelling at Defendants." (Dkt. 33, ¶ 21). Gonzalez disputes this claiming that the "the video evidence . . . shows that [he] was fully compliant and did not interfere with the officers when they were handcuffing him." (*Id.*)

Scrutinizing the Video Evidence frame-by-frame and under the slowest speed setting does not resolve the dispute over whether Gonzalez pulled his arm away, one or both of the Officers pulled Gonzalez's arm, or Gonzalez complied fully. (*See* Video Evidence). No doubt, a suspect pulling their arm away when police attempt to seize them may constitute probable cause. *See Pryor*

*v. Corrigan*, 124 F.4th 475, 488 (7th Cir. 2024) ("In *Brooks*, this court held that an officer had probable cause to arrest for resisting under 720 ILCS 5/31–1(a) when the subject pulled back from the officer's attempt to seize him.") (citing *Brooks v. City of Aurora*, 653 F.3d 478, 483-84 (7th Cir. 2011)). If Gonzalez was not physically resisting, but merely trying to turn to question the Officer's conduct, or if it was in fact the Officers who pulled Gonzalez back, there may be no grounds for probable cause at all. *See McCoy*, 378 Ill. App. 3d at 962. Ultimately, the Court must view "the facts in the light most favorable to the non-moving party" and, where, as here, there is a genuine issue of material fact whether Gonzalez pulled his arm away, summary judgment is improper. *Madero v. McGuinness*, 97 F.4th 516, 521 (7th Cir. 2024).[1]

## II. Malicious Prosecution

Defendants move for summary judgment against Gonzalez's malicious prosecution claims under the Fourth Amendment and Illinois law. (Dkt. 25 at 7-10). The Court has already found that probable cause is in material dispute. *Supra* at 1-9. The Court only addresses Defendants' arguments that Gonzalez cannot prove malice or improper purpose or motive. (Dkt. 25 at 9-10).

Defendants contend they "responded to multiple resident complaints, personally observed threatening and disorderly conduct, and acted to ensure public and officer safety." (*Id.* at 9). They point to Gonzalez's statements—"that he intentionally provoked police to secure a '$250,000

---

[1] Defendants raise qualified immunity for the first time in their reply brief. (Dkt. 40 at 6). Defendants cite no evidence in support. But they have "bigger problems" because they "waived it by waiting until the reply brief to raise it." *United States v. Garibay*, 621 F. App'x 843, 847 (7th Cir. 2015) (citing *Hernandez v. Cook Cnty. Sheriff's Office,* 634 F.3d 906, 913 (7th Cir. 2011)); *Sultan v. Fenoglio*, 775 F.3d 888, 891 (7th Cir. 2015) (Plaintiff "waived []his argument by omitting it from his opening brief"); *Trumbull v. SCI Illinois Servs., Inc.*, 575 F. App'x 683, 686 (7th Cir. 2014) ("an argument mentioned for the first time in a reply brief is waived") (citing *Nationwide Ins. Co. v. Cent. Laborers' Pension Fund,* 704 F.3d 522, 527 (7th Cir. 2013)). Defendants also waived the "any crime" rule. *See Thomas v. McAuliffe*, 170 F.4th 1057, 1063 (7th Cir. 2026) ("Under the 'any crime' rule, a false arrest claim is defeated when there was probable cause to arrest the plaintiff *for any crime*, not just the crime invoked at the time of the arrest.") (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) and *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007)). All the same, had Defendants raised it—e.g., for Gonzalez's apparent solicitation—that too would fail as there is a genuine issue of material fact whether Gonzalez violated any ordinance. *See, e.g.*, Village of Summit, Ill., Code of Ordinances tit. 5, ch. 12 (2025); *see also id*. § 5-12-1 et seq.

payday'"—to contend that "this arrest was the foreseeable result of his own behavior, not evidence of malice by law enforcement." (*Id.*) They also note there "is no evidence that Defendants fabricated evidence, provided false reports, or acted from personal animus." (*Id.* at 9-10).

Gonzalez counters by noting that "'malice may be inferred from a lack of probable cause when the circumstances are inconsistent with good faith by the prosecutorial team and lack of probable cause has been clearly proved.'" (Dkt. 32 at 8) (quoting *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 141 (2021)). Thus, "the record viewed in the light most favorable to plaintiff shows a lack of probable cause from which a jury could infer malice," Gonzalez contends. (*Id.*)

"To succeed on" "a Fourth Amendment malicious-prosecution claim under 42 U.S.C. § 1983," "a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, n.2 (2022)). "The elements of the malicious prosecution tort" under the Fourth Amendment "are: (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused." *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025) (quoting *Thompson*, 596 U.S. at 44). "To state a claim for malicious prosecution [under Illinois law], a plaintiff must prove five elements: (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff." *Rosenbaum v. Samler*, 2025 IL App (1st) 240039, ¶ 66. (quotes omitted). "All elements must be present." *Id.*

Gonzalez's claims rise and fall on whether he can prove malice. Malice, or a "malicious" "motive in instituting" a suit, "was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 596 U.S. at 44;[2] *Neita*, 148 F.4th at 939. "Malice" requires facts "such as a lack of good faith, a failure to adequately investigate, or personal animosity." *Evans v. Matson*, 2024 WL 2206638, at *2-3 (7th Cir. May 16, 2024). Under Illinois law, "[m]alice, as an element of malicious prosecution, has been defined as the initiation of a prosecution for an improper motive." *Beaman*, 2021 IL 125617, ¶ 141 (citing *Glenn v. Lawrence*, 280 Ill. 581, 586 (1917)). "An improper motive for a prosecution is any reason other than to bring the responsible party to justice." *Id.* (citing *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 3492 (2000)); *Bowes v. Alvarez*, 2024 IL App (1st) 230749, ¶ 23 ("To prevail on a claim of malicious prosecution, a plaintiff must show . . . the absence of probable cause for such proceeding" and "the presence of malice.") (quoting *Ritchey v. Maksin*, 71 Ill. 2d 470, 475, (1978)). Black's Law Dictionary defines malice as "1. The intent, without justification

[2] The Supreme Court noted in a footnote that it "need not decide whether a plaintiff bringing a Fourth Amendment claim under § 1983 for malicious prosecution must establish malice (or some other *mens rea*) in addition to the absence of probable cause." *Thompson*, 596 U.S. at 44, n.3. That caused confusion. Even amongst the dissent: "the Court refers repeatedly to 'malicious prosecution,' one might think that this requires a guilty mental state"; "but in a footnote, the Court raises the possibility that the constitutional tort it recognizes may require nothing more than the absence of probable cause." *Id.* at 60 (Alito, J., dissenting). Some courts interpreted this to mean that malicious prosecution does not require malice, but merely "the absence of probable cause." *See, e.g.*, *Jervell Barnes v. Trooper G. White, et al.*, 2026 WL 881725, at *10-11 (N.D. Ill. Mar. 31, 2026) ("The Court acknowledges that it is counter-intuitive that proving 'malicious prosecution' would not require a plaintiff to actually show malice"; nevertheless, "this Court has twice ruled . . . that the 'malice' element of Fourth Amendment malicious prosecution only requires establishing the absence of probable cause."); *Hernandez v. Guevara*, 2024 WL 4299046, at *10 (N.D. Ill. Sept. 26, 2024) ("Malicious is defined as without probable cause.") (quotes omitted). The plain language in *Thompson*, Seventh Circuit precedent, and the ordinary meaning of the term malice, however, require both malice and lack of probable cause for a malicious prosecution claim. *See infra* at 11-12; Black's Law Dictionary, p. 1102 (defining malicious prosecution as the "institution of a criminal or civil proceeding for an improper purpose and without probable cause" and requiring both "lack of probable cause" and "malice"); *see also id.* ("[I]t is well established that unless want of probable cause and malice concur no damages are recoverable.") (quoting Martin L. Newell, *A Treatise on the Law of Malicious Prosecution, False Imprisonment, and the Abuse of Legal Process* 6, (1892)). Other circuits that recently addressed this issue agree. *See, e.g.*, *Bledsoe v. Willis*, 665 F. Supp. 3d 810, 818 (W.D. La. 2023), *aff'd*, 2023 WL 8184814 (5th Cir. Nov. 27, 2023) (5th Circuit precedent requires "the absence of probable cause" and "malice"); *Moses-El v. City & Cnty. of Denver*, 2022 WL 1741944, at *8, n.15 (10th Cir. May 31, 2022) ("In our circuit, malice is a distinct element.").

or excuse, to commit a wrongful act. 2. Reckless disregard of the law or of a person's legal rights. 3. Ill will; wickedness of the heart." Black's Law Dictionary, p. 1100 (10th ed. 2014).

Defendants' arguments on malice and improper purpose lack evidentiary support; indeed, they vaguely reference prior arguments without citations. (Dkt. 25 at 9-10). There is no evidence the Officers acted with malice or that the government initiated the criminal case for an improper purpose. (*See* Dkts. 24-41). On this basis, Gonzalez's malicious prosecution claims would fail; there is, however, a genuine issue of material fact whether the Officers had probable cause to arrest Gonzalez. *Supra* at 1-9. Critically, malice may be "inferred from a complete lack of probable cause or a failure to conduct an adequate investigation under the circumstances." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (quoting *Golden Years Homestead, Inc. v. Buckland,* 557 F.3d 457, 462 (7th Cir. 2009)); *Beaman*, 2021 IL 125617, ¶ 141 ("The element of malice may be inferred from a lack of probable cause when the circumstances are inconsistent with good faith by the prosecutorial team and lack of probable cause has been clearly proved."). So, should a jury find a complete lack of probable cause, then they may infer malice. *Id.* If not, then Gonzalez's claims would fail. *Id*. Summary judgment is therefore improper. *Johnson*, 164 F.4th at 1085.

## III. Constitutional Deprivation of Liberty

Defendants contend that Gonzalez's "brief detention . . . does not constitute a constitutional deprivation." (Dkt. 25 at 10). Gonzalez submits that Defendants' position must fail because they "rely on cases decided before *McDonough v. Smith,* 588 U.S. 109 (2019), to argue that the 48 hours plaintiff was detained after his arrest before he was released from police custody on a personal recognizance bond does not 'demonstrate a constitutional deprivation of liberty.'" (Dkt. 32 at 8).

The 48-hour inquiry is "not a bright line" test but a "burden-shifting approach" to the reasonableness of the time between the suspect's arrest and presentation to a magistrate for a

probable-cause hearing. *Portis v. City of Chicago, Ill.*, 613 F.3d 702, 704-5 (7th Cir. 2010) (citing *County of Riverside v. McLaughlin,* 500 U.S. 44, 56-57 (1991)). A "detention less than 48 hours may be unreasonably long. Needless delay, or delay for delay's sake—or, worse, delay deliberately created so that the process becomes the punishment—violates the fourth amendment." *Id.* at 705 (citing *McLaughlin,* 500 U.S. at 56, 59). That said, this burden-shifting approach "does not apply when the police don't plan to present the suspect to a magistrate for a probable-cause hearing." *Id.* at 704 (7th Cir. 2010) (citing *Chortek v. Milwaukee,* 356 F.3d 740, 746-47 (7th Cir. 2004)). To be sure, brief detentions, even up to 48 hours, have failed to constitute a constitutional deprivation under the Fourth Amendment. *See, e.g.*, *Theodorou v. Tanner*, 842 F. Supp. 326, 327 (N.D. Ill. 1994) ("a brief incarceration and/or a quick trial do not constitute the sort of shocking deprivation of liberty necessary to vault a malicious prosecution from the realm of common law to constitutional tort"); *Grauer v. Donovan,* 1993 WL 433623 (N.D. Ill. 1993) (imprisonment for several hours pending bond insufficient to allege the constitutional violation necessary to support a malicious prosecution claim).

Gonzalez sued for malicious prosecution, not excessive detention. He does not allege his confinement was unreasonable—he alleges the government initiated the proceedings with malice. (*See* Dkt. 1). So right off the bat Defendants are out in left field. This mistake infects their position. (*See* Dkt. 25 at 10). The decisions Defendants contend require this Court to find that Gonzalez's "brief detention" "does not constitute a constitutional deprivation" predate *Thompson v. Clark*, 596 U.S. 36 (2022). (*Id.*). They turn on distinguishable (and irrelevant) facts and raise elements that differ from what *Thompson* mandates. *Compare Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir. 1998) and *Spiegel v. Rabinovitz*, 121 F.3d 251, 256 (7th Cir. 1997) *with Thompson v. Clark*, 596 U.S. 36 (2022). At any rate, Defendants' cursory and undeveloped argument fails because the detention in

*Thompson* was as long as here: two days. *Thompson*, 596 U.S. at 40 ("Thompson remained in custody for two days."); (Dkt. 32 at 8-9; Dkt. 33, ¶¶ 23-34). There are also genuine issues of material fact over the length, conditions, and reasonableness of Gonzalez's confinement. (Dkt. 41, ¶¶ 17-19; Dkt. 33, ¶¶ 23-29); *see also Portis*, 613 F.3d at 704-5 ("the court must examine not only the length of a given detention but also the reasons why release was deferred").

**IV. Termination of Prior Proceedings**

Defendants' final argument is that, while it is true that Gonzalez "was acquitted of misdemeanor charges after a bench trial, a favorable termination alone does not prove malicious prosecution unless the outcome is indicative of innocence." (Dkt. 25 at 10) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)). Defendants assert that there is no evidence that the state court found Gonzalez "innocent" but "only that the prosecution failed to meet its burden beyond a reasonable doubt." (*Id.*)

Defendants provide no evidentiary support for this argument. This violates Local Rule 56.1(a)(2). They instead rely on attorney argument and one Illinois case: *Swick v. Liautaud*, 169 Ill. 2d 504 (1996). The court in *Swick* addressed "[w]hether the nol-pros of a criminal charge constitutes a favorable termination in a malicious prosecution action." *Id.* at 512. That is not relevant here. Gonzalez was acquitted on all counts with a "Finding of Not Guilty." (Dkt. 26-7 at 2); *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 652 (2002) ("The issue of favorable termination of the underlying proceedings is likewise not disputed, and must be decided in the Fabianos' favor. The record reflects that Sandra Fabiano was found not guilty of the predicate criminal charges[.]"); *Colbert v. Willingham*, 2015 WL 3397035, at *8, n.6 (N.D. Ill. May 26, 2015), *aff'd sub nom. Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) (grand jury indictment terminated in plaintiff's favor, resulting in a finding of not guilty).

Gonzalez did not respond to Defendants' argument. (*See* Dkt. 32). This would normally mean Gonzalez admitted Defendants' factual contentions. *See* L.R. 56.1(e)(3).[3] That did not occur here because Defendants submitted no factual contentions at all—just legal and attorney argument. (Dkt. 25 at 10). While it is Gonzalez's "burden to prove a favorable termination of proceedings" at trial (*Bonds v. Fizer*, 2014 IL App (1st) 123601-U, ¶ 34), Defendants bear the initial burden on summary judgment. *Celotex*, 477 U.S. at 325; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). By failing to carry their initial burden—by neither affirmatively negating an essential element of Gonzalez's claim nor pointing to the absence of evidence to support an essential element—the burden never shifted to Gonzalez. *Id.*; *NLFC*, 45 F.3d at 234 ("The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. . . . After the moving party makes this initial showing, the burden shifts to the party opposing summary judgment[.]"). This meant that Gonzalez had no duty to respond. *Id.*[4] In sum, "as happened here," "when a movant fails to meet its initial summary-judgment burden, the burden does not shift to the nonmovant and the motion should be denied[.]" *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019).

**CONCLUSION**

The Court denies Defendants' motion for summary judgment. (Dkt. 24).

---

[3] *See also Renea Walker v. Costco Wholesale Corp.*, 2026 WL 1045613, at *3 (N.D. Ill. Apr. 17, 2026) ("The Court requires 'strict' compliance with its rules and procedures: '[m]otions for summary judgment and responses must comply with Local Rules 56.1(a) and 56.1(b), as well as the procedures outlined herein. . . . Failure to abide by the Local Rules may result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted, or denying summary judgment.'") (quoting Chamber's Case Procedures – Motions for Summary Judgment (https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kendall); *Sentinel Ins. Co., Ltd. v. Majestic Auto Glass Inc.*, 2026 WL 663820, at *3 (N.D. Ill. Mar. 10, 2026) (statement of facts deemed admitted when party failed to respond); *Duran v. Chief Judge of Cir. Ct. of Cook Cnty.*, 2026 WL 663405, at *2 (N.D. Ill. Mar. 10, 2026) (same).

[4] Although, by failing to respond, Gonzalez waived his right to challenge Defendant's legal position. *Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016) ("arguments not made in response to summary-judgment motion are waived") (citing *C & N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014)).

Virginia M. Kendall

United States District Judge

Date: August 26, 2026